Filed: 7/31/13  In re J.E. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.E., a Person Coming Under the Juvenile Court Law. | B245048 (Los Angeles County Super. Ct. No. CK75917) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  JASMINE E.,  Defendant and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Carol Richardson, Referee.  Affirmed.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Jasmine. E. (mother) appeals from the juvenile court's jurisdiction and disposition orders finding her two oldest children, J.E. and A.E., dependent children of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (b) and (j),[1] removing them from mother's custody, and awarding L.E., their father, sole legal and physical custody over them. Mother contends that there is not substantial evidence to support the juvenile court's findings and orders. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2012, plaintiff and respondent Department of Family and Children's Services (Department) filed a section 300 petition on behalf of J.E., then 11 years old and A.E., then six years old, along with their half-siblings J.V., then four years old and C.V., then three years old.[2] The petition eventually was sustained, as amended, pursuant to section 300, subdivisions (b) and (j), stating that, "On 2-29-12 the child[,C.V.,] was medically examined due to sustaining a detrimental and endangering condition consisting of second degree burns to the soles of the child's feet, areas of the top of the child's feet and to the web spaces between the child's toes. Said injuries would not ordinarily occur without the neglectful acts of the child's mother . . . who had care, custody and control of the child. Such neglectful acts of [mother] to the child endangers the child's physical health and safety and places the child and the child's sib[lings] [J.E.], [A.E.] and [J.V] at risk of harm, damage and danger."

Prior to the petition at issue, a November 16, 2008, substantiated referral was made to the Department alleging mother's general neglect of A.E., J.E., and J.V., for, inter alia, having left J.V. in a car with the doors and windows shut, unresponsive to the sweating child's cries and screams, while she talked on the telephone, failing to feed the

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Only J.E. and A.E. are subjects of this appeal.

2

children, and not placing A.E. in a car seat. Mother and the presumed father of J.V. and C.V. (V-father) were also reported to use drugs and reportedly engaged in acts of domestic violence.

On March 4, 2009, a petition was sustained under section 300, subdivision (a), (b), and (j), based on mother's physical abuse of J.E. by hitting him with a belt and hanger, C.V.'s positive toxicology test for methamphetamines, mother's history and current abuse of methamphetamines, and possession by mother and V-father of illegal drugs and drug pipes in the home within access to the children. A petition under section 342 was filed on March 23, 2010, sustained by the juvenile court on May 4, 2010, pursuant to section 300, subdivisions (a), (b), and (j), based on mother and V-father's violent altercation in the presence of J.V. that included breaking the television and furniture, throwing food, and threatening each other.

According to the Department, father said he and mother separated in 2007, and mother moved among various motels. Father filed for custody of J.E. and A.E. in 2008; initially he was only awarded visitation of the children. Specifically, on November 26, 2008, a family law court granted father visitation rights as to J.E. and A.E. because mother refused to allow him to visit regularly the children. The family law court also ordered mother to refrain from drug use near J.E. and A.E., and prohibited mother from leaving the children alone in motels. On April 6, 2009, the family law court granted father sole legal custody of J.E. and A.E. Mother was granted visitation rights every Saturday for two hours at the Montebello Police Station, and father was to be monitored by father at a distance. On October 3, 2011, mother and father entered into a stipulated family law order regarding custody and parenting plan providing that mother shall have care and responsibility of J.E. and A.E. on the second and fourth weekend of every month, and when the children are in school, every Tuesday from 7:00 p.m. until the following day "with a drop-off at school." The order provided that father shall have care and responsibility for the children during all other times.

The current proceedings began on February 29, 2012, when Department received an emergency response referral alleging severe neglect of C.V., then three years old, by

mother. J.V., J.E. and A.E. were alleged to be at risk. The referral stated that mother placed C.V., the half-brother of J.E. and A.E., standing in a bathtub and ran the water to get it warm. Mother stepped away for about two minutes, heard C.V. scream, ran back and took C.V. out of the bathtub, and saw that C.V. had burned his feet.

Mother told the Department and that she left C.V. by himself in the bathtub to use the computer. A physician treated C.V. and diagnosed C.V. as sustaining second degree burns to the soles of both feet, in the webbing between his toes, and on some spots on the dorsal part of his feet.

V-father told the Department that mother was neglectful for leaving C.V. in the bathtub, and that he believed mother was jealous that his children wanted to be with him and the paternal family, rather than with her. The Department observed that the relationship between V-father and mother was "strained" and "tense," and the Department required that mother and V-father sign a safety plan stating that they will not involve the children in any domestic violence altercations.

On April 24, 2012, J.E. said he sometimes likes to visit mother, but he cannot sleep on Friday nights when he visits mother because mother cries. Two Fridays before, mother was crying because V-father was coming in and out of the home. J.E. and A.E. said they hear mother and V-father arguing. A.E. said V-father pushed mother and mother was crying.

On April 27, 2012, the paternal aunt, E.V., told the Department that she had custody of C.V. for two years, the child was afraid of his mother, and E.V. was concerned because C.V. "keeps getting hurt" when he is under mother's care. Another paternal aunt, B.C., told the Department that she had legal guardianship of J.V., and her sister, E.V., had custody of C.V. because he was born testing positive for methamphetamine. B.C. said that mother was not responsible with the children. Mother drove in a car with J.V.; J.V. did not have on a seat belt, and he hit his head, leaving a scar.

On April 27, 2012, mother, V-father, and father attended a team decision making meeting (TDM). It was agreed at the TDM that mother and V-father were to participate in anger management and individual counseling, mother and V-father were to undergo

4

"on demand drug testing," V-father was to undergo random drug testing, J.E. and A.E. would "remain" with father, and J.E. and A.E. were to undergo individual counseling. Mother and V-father were informed that "a warrant" would be requested if they did not comply with the agreement, and mother stated that she understood.

Between April 27, 2012, and May 16, 2012, mother and V-father continued to have ongoing verbal disputes with one another, called the police department on each other, and accused each other of being either an abusive partner or a neglectful parent toward their children. Mother, V-father and other family members stated that the ongoing disputes between mother and V-father were "putting the children's emotional wellbeing at risk" and the children were reported to show clear signs of distress and cried every time one of the parents would call the police on the other parent.

On May 18, 2012, the Department "served [a] warrant" on mother and V-father. On that date, mother obtained a temporary domestic violence restraining order against V-father preventing him from, inter alia, contacting J.V. or C.V. Mother declared in support of her request for the restraining order that on April 2, 2012, V-father threatened to shoot her with his father's gun, on April 13, 2012, V-father "pushed and shoved [her] to the ground in front of . . . 6 year old [A.E.]," on April 20, 2012, mother "kicked V-father out of the house "due to [his] drug activity" and his possession of drug paraphernalia, and on May 15, 2012, [V-father] burglarized her home "stealing 1,500 in cards, money." Also on May 18, 2012, father advised the Department that he had enrolled J.E. and A.E. in counseling through his own insurance, and he would inform the Department when they had their first session.

At the May 23, 2012, detention hearing, the juvenile court found father to be the presumed father for J.E. and A.E., and V-father to be the presumed father for J.V. and C.V. The juvenile court noted that J.E. and A.E. were in father's custody and had been detained from mother, and that J.V. and C.V. had been detained from both mother and V-father. Father's counsel advised the juvenile court that father had sole custody of J.E. and A.E. from an existing family law order, but mother "has overnight weekends." The juvenile court stated it would be modifying that family law order. The juvenile court

5

made prima facie findings to detain the children from mother, and it released the children to their respective fathers. The V-father's address was to remain confidential from the mother. The juvenile court permitted mother to have monitored visits with the children.

The Department's June 29, 2012, jurisdiction/disposition report provided that on June 5, 2012, father stated that J.E. and A.E. have begun their first counseling session. J.E. said he liked spending time with father. In response to the Department's inquiry about what J.E. did not like doing, he stated, "When I go with my mom sometimes she gets me confused because she goes to South Gate to try to talk to [V-father] . . . . She was driving all around and was so boring and so stressful. I don't like it because whatever she promises, it just breaks. [In about April 2012,] she promised to take us to Universal Studios but she never took us that day because she was looking for [V-father]." Father said that J.E. told him that one of the last times J.E. saw mother, mother was looking for V-father. J.E. also said, "I like [to visit mother] if it is not overnights because my mom would begin fighting with [V-father]. I don't feel comfortable." J.E. did not like to hear them argue, but he was willing to visit mother with a monitor present. The Department reported that J.E. and A.E. both stated that they would like to continue to live with father, and would like to have visits with mother.

According to the June 29, 2012, report, on June 4, 2012, the Department confirmed that mother was enrolled in and attended individual counseling, but on June 8, 2012, mother stated that she did not submit to drug testing as of yet. Mother said, "I will test next time. I promise." On June 25, 2012, however, mother stated "I am not drug testing. The first time (on demand referrals) I didn't have proper ID. The second time they were closing. The 3rd time I didn't show. The 4th time I was at work. I couldn't get out of work. I didn't have transportation."

The Department's June 29, 2012, jurisdiction/disposition report provided that on June 25, 2012, mother said that V-father threatened her with death, and that V-father hit mother once before V-father was incarcerated in 2010 for probation violation in a domestic violence case with his ex-girlfriend.

6

The Department assessed father's home and "found that it was clean, furnished, with ample food and working utilities." According to the Department, father had been appropriate with J.E. and A.E., and compliant with the Department and earlier family law orders.

The Department's August 8, 2012, last minute information for the court stated that mother said V-father "pounds on her door and she allows him into her apartment and he stays the night. Mother stated that she and [V-father] go out to dinner together. Mother reported that she found a baggie which she suspected to be drugs and she flushed it down the toilet. [The Department] asked mother why she was allowing [V-father] into her home and having contact with him. Mother stated, 'I thought you guys were supposed to do FR services for the family?' [The Department] explained to [mother] that the services are for her to reunify with her children. . . . Mother appeared to be more concerned about her relationship with [V-father] than being concerned about her own safety or reunifying with the children. . . . Mother stated that currently she is not enrolled in any programs."

On August 8, 2012, mother entered into a mediation agreement, approved by her counsel, stating that, inter alia, "Mother . . . will submit on the petition amended as follows. . . . [¶] Count b-1, j-1: *True as filed* except deleted in line 4 'deliberate unreasonable' and in line 6 the words 'deliberate unreasonable.' [¶] Count a-1, a-2, a-3, b-2, b-3, b-4, b-5, j-2, j-3, j-4: Dismiss without prejudice." Also on August 8, 2012, mother executed a waiver of rights form stating that she wished to "submit the petition on the basis of the social worker's report . . . and other documents, if any." (Italics added.)

The Department's August 30, 2012, last minute information for the court stated that in July 2012, V-father allowed mother to visit with the children in mother's home. The Department recommended that the juvenile court order an Evidence Code section 730 evaluation of mother "because it appears that mother has difficulty processing and understanding instructions and lacks insight as to safety issues."

The August 30, 2012, last minute information for the court stated that mother complained that father and V-father were keeping her from visiting the children. Mother

7

admitted that that she was visiting with the children in her home, stating, "I am not going to turn my kids away if they are at my door step." The Department reminded mother that her visits with the children were to be monitored and in a neutral location—not at her home. The Department reported that mother became upset and no longer wanted to discuss her past visits with the children.

According to the August 30, 2012, last minute information for the court, on August 13, 2012, the Department unsuccessfully attempted to contact mother on several occasions to demand that she test for drugs, but her telephone number was disconnected. Mother told the Department that V-father had forced his way into her home and taken her cell phone. Mother also told the Department that V-father carried a concealed hand gun on him, which he put on her dresser when he stayed at her home and slept. Mother also refused to drug test on-demand, stating that she already had signed up to do random drug testing, had lost her job on August 16, 2012, and she could not spare any time because she was about to lose her apartment as well.

During the August 30, 2012, adjudication hearing, the juvenile court received into evidence, without objection, the Department's June 29, 2012, jurisdiction/disposition report, the August 8, 2012, last minute information for the court, and the August 8, 2012, mediation agreement. The juvenile court found as true counts a-1 and j-1, found that the children were described by section 300, subdivisions (b) and (j), and dismissed remaining counts without prejudice. The juvenile court found J.E. and A.E. to be children described by section 300, subdivisions (b) and (j), finding true the following amended petition allegations: "On 2-29-12 the child[, C.V.,] was medically examined due to sustaining a detrimental and endangering condition consisting of second degree burns to the soles of the child's feet, areas of the top of the child's feet and to the web spaces between the child's toes. Said injuries would not ordinarily occur without the neglectful acts of the child's mother . . . who had care, custody and control of the child. Such neglectful acts of [mother] to the child endangers the child's physical health and safety and places the child and the child's sib[lings] [J.E.], [A.E.] and [J.V] at risk of harm, damage and danger."

8

The Department's September 13, 2012, last minute information for the court stated that mother did not drug test on September 5, 2012, and August 27, 2012, as required. At the September 13, 2012, contested disposition hearing, the juvenile court continued the matter to October 23, 2012, at mother's request, to have the regular hearing officer hear the matter. The juvenile court ordered mother to attend the October 23, 2012, hearing.

At the October 23, 2012, continued disposition hearing, mother was not present, and mother's counsel requested to continue the matter for the regular hearing officer. Counsel for the Department objected, stating, "This disposition was from May. Most of the issues were mediated on August 8th. We have a mediation agreement as to everything." The juvenile court denied the request for a continuance, finding no good cause to continue the matter beyond the six-month date.

The juvenile court received into evidence, without objection, the Department's June 29, 2012, jurisdiction/disposition report, and the August 8, 2012, August 30, 2012, and September 13, 2012, last minute information reports for the court. Mother's counsel argued that the case should remain open so mother could reunify with J.E. and A.E., and mother's counsel otherwise "submitted." Father's counsel requested that the juvenile court terminate jurisdiction over J.E. and A.E, and grant him sole legal and physical custody of the children. The children's counsel joined with statements by father's counsel, and asked that mother's visits with the children be monitored. The Department's counsel joined with counsel for father and the children. The juvenile court declared all the children dependents of the court. Over mother's unspecified objection, the juvenile court ordered that father retain custody of J.E. and A.E.—"placed in the HOME OF PARENT-FATHER," and found that conditions no longer exist justifying continued jurisdiction. The juvenile court stated that it will terminate jurisdiction over J.E. and A.E., with a family law order granting father sole legal and physical custody of J.E. and A.E. and monitored visits by mother at least once a week.

The matter was continued for the receipt of the family law order as to J.E. and A.E. On October 26, 2012, the family law order was signed and filed. The family law order granted father legal and physical custody of J.E. and A.E., with his residence as the

9

primary residence for J.E. and A.E.  Mother was permitted supervised visitation at least once a week, with a monitor approved by father.  On October 26, 2012, jurisdiction was terminated.

## DISCUSSION

### A.  Jurisdictional Findings

Mother contends that there is not substantial evidence to support the juvenile court's jurisdictional findings that J.E. and A.E. were at risk of harm.  Mother, however, is barred from challenging the jurisdictional findings because she entered into a negotiated settlement regarding the petition allegations.  And even if she was not so barred, there is substantial evidence supporting the juvenile court's findings.

### 1.  *Bar in Challenging Jurisdictional Findings*

The Department contends that mother is barred from challenging the jurisdictional findings because she entered into a negotiated settlement regarding the petition allegations.  We agree.

#### a.  Background Facts and Relevant Proceedings

During the August 30, 2012, adjudication hearing, the juvenile court said, "It's my understanding that this matter resolved in mediation and we're going to set it for a disposition?"  Mother's counsel responded, "Yes."  The juvenile court reviewed mother's waiver of rights form with her, and then asked mother, "And are submitting on the documents filed by the Department and the *mediation agreement that you agreed to*?" (Italics added.)  In that agreement, mother agreed that the petition was "true as filed" with an exception not relevant here.  Mother responded, "Yes."  The juvenile court then stated, "Based upon that, the court will make the following findings; the court has read and considered the social worker's report [August 8, 2012, last minute information for the court,] the jurisdiction/dispo report dated June 29th, 2012 and the mediation agreement

10

dated August 8th, 2012, and based upon that, the court makes the following findings. The court finds by a preponderance of the evidence that the following is true. . . . b-1 is sustained as amended. . . . j-1 is sustained as amended. . . . [¶] The court finds that [the children] are hereby described by Welfare and Institutions Code 300, sub section b and j." The juvenile court dismissed remaining counts—a-1, a-2, a-3, b-2, b-3, b-4, b-5, j-2, j-3 and j-4, without prejudice.

The juvenile court, therefore, found J.E. and A.E. to be children described by section 300, subdivisions b and j, finding true the following amended petition allegations: "On 2-29-12 the child[,C.V.,] was medically examined due to sustaining a detrimental and endangering condition consisting of second degree burns to the soles of the child's feet, areas of the top of the child's feet and to the web spaces between the child's toes. Said injuries would not ordinarily occur without the neglectful acts of the child's mother . . . who had care, custody and control of the child. *Such neglectful acts of [mother] to the child endangers the child's physical health and safety and places the child and the child's sib[lings] [J.E.], [A.E.] and [J.V] at risk of harm, damage and danger.*" (Italics added.)


b.      Analysis

If a parent does not contest jurisdiction, he or she "may elect to admit the allegations of the petition, plead no contest, or submit the jurisdictional determination to the court based on the information provided to the court and waive further jurisdictional hearing." (Cal. Rules of Court, rule 5.682(e).) When a parent submits the jurisdictional issue to be determined by the juvenile court solely on the basis of the social worker's report, the parent does not waive his or her right to challenge the sufficiency of the evidence to support the juvenile court's jurisdictional finding. However, "An admission that the allegations of a section 300 petition are true . . . bars the parent from bringing an appeal to challenge the sufficiency of the evidence supporting the jurisdictional allegations. (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1180-1181 [13 Cal.Rptr.2d 724, 840

11

P.2d 266]; see also *In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1526 [108 Cal. Rptr.3d 268].)" *In re N.M.* (2011) 197 Cal.App.4th 159, 167.)

In *In re N.M.*, *supra*, 197 Cal.App.4th 159, the father and the Department agreed to a mediated settlement on amended language to be sustained prior to the jurisdictional/dispositional hearing. The parties agreed that the petition language concerning the father's physical abuse of the child be stricken, and the father agreed to participate in therapy to address physical abuse issues. The father submitted a waiver "effectively submitting the jurisdiction issue to the court to be determined on the basis of the social worker's reports." (*Id.* at p. 165, fn. 2.) The juvenile court sustained the amended petition pursuant to section 300, subdivision (a). (*Id.* at p. 165.)

The juvenile court held that the father waived his right to challenge the jurisdictional findings, stating, "Although *In re Tommy E.* [(1992)] 7 Cal.App.4th 1234 [holding that a parent does not waive his or her right to challenge the sufficiency of the evidence to support the court's jurisdictional finding by submitting that the jurisdictional issue to be determined by the juvenile court solely on the basis of the social worker's report] was in the same procedural mode as this case, there is an additional wrinkle here—the settlement negotiations undertaken to avoid a trial. Under the settlement, [the father] admitted to the acts set forth in the amended petition and agreed to address the physical acts of abuse that were stricken from the original dependency petition in therapy. [The father's] agreement to deal with the physical abuse issue in therapy is akin to an admission because otherwise there would be no need for therapy if the juvenile court was not going to take jurisdiction of the case. The negotiated settlement was essentially a contract; both [the Department] and [the father] were entitled to enforcement of the terms of their agreement. [The father], having received the benefits of the settlement, is precluded from attempting to better the settlement on appeal. By accepting the negotiated settlement—and its benefits—[the father] implicitly waived his right to challenge the true finding under section 300, subdivision (a)." (See *People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569].)" (*In re N.M.*, *supra*, 197 Cal.App.4th at p. 167.)

12

Mother contends that *In re N.M.*, *supra*, 197 Cal.App.4th 159, is not applicable because "there was no explicit nexus between the granting of specific reunification services to mother, as in N.M., to deal with the dismissed allegations." In *In re N.M.*, the father's agreement "to deal with the physical abuse issue in therapy [was] akin to an admission . . . ." (*Id.* at p. 167.) Here, mother's agreement was not "akin to an admission;" it was an express admission. Mother agreed to submit on the amended petition, "true as filed" except for certain language deleted from the petition. That is, mother agreed that the amended language of the petition was "true." Mother's counsel stated at the jurisdictional hearing that she agreed with the juvenile court that "this matter [has been] resolved in mediation and [can be set] for" disposition.

### 2. *Substantial Evidence*

Even if mother is not barred from challenging the jurisdictional findings because she entered into a negotiated settlement regarding the petition allegations, there is substantial evidence that mother's neglectful acts placed J.E. and A.E. at risk of harm.

### a. Standard of Review

On appeal, we review the juvenile court's finding of jurisdiction for substantial evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]" (*Ibid.*) "The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to other appeals." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) An appellate court does not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. (*Ibid.*; *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564 [issues of fact and credibility are questions for the trier of fact].) Instead, the reviewing court draws all reasonable inferences in support of the juvenile court's findings, considers the record most favorably to the juvenile court's order, and

13

affirms the order if it is supported by substantial evidence even if other evidence supports a contrary conclusion.  (*In re L.Y.L., supra*, 101 Cal.App.4th at p. 947.)

>           b.        Analysis

The juvenile court found that J.E. and A.E., were children described by section 300, subdivision (b) and (j).  Section 300, subdivisions (b) and (j), provides in pertinent part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:  [¶]  . . . [¶]  (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse.  . . .  [¶] . . . [¶]  (j) The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions.  The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

Evidence that J.E. and A.E. were at risk of harm includes that C.V. sustained second degree burns to his feet when mother left him alone in a bathtub with running water so she could check her computer in another room; mother allowed V-father to be around the children, despite V-father threatening mother and mentally abusing the children; and mother reporting to the police that V-father threatened her with physical harm.

A prior referral of mother that she neglected A.E., J.E., and J.V., was substantiated, including allegations that mother left J.V. in a car with the doors and windows shut, unresponsive to the sweating child's cries and screams, while she talked on the telephone, failing to feed the children, and not placing A.E. in a car seat. Also, on March 4, 2009, a petition was sustained under section 300, subdivision (a), (b), and (j), based on mother's physical abuse of J.E. by hitting him with a belt and hanger, C.V.'s positive toxicology test for methamphetamines, mother's abuse of methamphetamines, and possession by mother and V-father of illegal drugs and drug pipes in the home within access to the children. On May 4, 2010, the juvenile court sustained a section 342 petition under section 300, subdivisions (a), (b), and (j), based on mother and V-father's violent altercation in the presence of J.V. that included breaking the television and furniture, throwing food, and threatening each other.

That C.V. sustained second degree burns to his feet demonstrates that mother's neglect and poor judgment places J.E. and A.E. at risk of harm. "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child. [Citations.]" (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) The foregoing evidence is sufficient to support the trial court's findings.

## B.     Disposition

Mother contends that there is not substantial evidence to support the juvenile court's order removing J.E. and A.E. from her custody. Mother however is barred from challenging the removal order, and even if she is not barred, there is substantial evidence to support the order.

On October 3, 2011, mother entered into a stipulated family law order regarding custody and parenting plan providing that father was to have care and responsibility for J.E. and A.E. during all times except when mother had care and responsibility of the children—on the second and fourth weekend of every month, and when the children are in school, every Tuesday from 7:00 p.m. until the following day "with a drop-off at school." At the May 23, 2012, detention hearing, the juvenile court modified the

15

stipulated family law order—it detained J.E. and A.E. from mother, released them to father, and provided mother with monitored visits with them. On August 8, 2012, mother entered into a mediation agreement stating that, inter alia, "[The p]arties agree that [J.E.] and [A.E.] remain in the home of [their] father . . . ." At the October 23, 2012, disposition hearing, mother's counsel argued only for the case to remain open so that mother may have a chance to reunify with J.E. and A.E.; mother otherwise "submitted." Over mother's objection, the juvenile court ordered that father retain custody of J.E. and A.E. and placed them in the home of father. As stated by mother, "Therefore, mother claims that the children were removed from her care."

By virtue of the mediation agreement, mother agreed that the children be removed from her care and responsibility. Mother cannot now challenge the removal order.

Even if mother is not barred from challenging the removal order, there is substantial evidence to support the order. Section 361, subdivision (c)(1) states, "(c) A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence[3] of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, in an Indian child custody proceeding, paragraph (6): [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot

---

**3** To the extent J.E. and A.E. remained exclusively in the custody of father, the proper burden of proof may have been preponderance of the evidence. (See *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1112-1114, abrogated on other grounds in *People v. Brown* (1994) 8 Cal.4th 746, 763.) Under either burden of proof, our holding would be the same. Clear and convincing evidence may be the standard for the trial court but is not the standard of review for the appellate court. (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1525-1526.)

16

be safely left in the physical custody of the parent . . . with whom the minor resided at the time of injury."

"'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citation.] . . . [A]n order removing a child from parental custody [is reviewed] for substantial evidence in a light most favorable to the juvenile court findings. [Citations.]" (*In re Miguel C*. (2011) 198 Cal.App.4th 965, 969.) On appeal, we review the juvenile court's finding of clear and convincing evidence to support a removal order for substantial evidence. (*In re Henry V*. (2004) 119 Cal.App.4th 522, 529.)

Substantial evidence supported the juvenile court's order removing J.E. and A.E. from mother's physical custody. At the time of the disposition hearing, the juvenile court had sustained the petition regarding mother's neglectful acts placing J.E. and A.E. at risk of harm. There was evidence that mother had failed to drug test; and mother had not visited J.E. and A.E. for several weeks; mother alleged that V-father was carrying drugs, threatened her with bodily harm, and forced his way into mother's home; V-father pushed mother while A.E. was present; yet, mother frequently went to dinner with V-father and he sometimes spent the night with mother; and J.E. and A.E. stated that mother and V-father would fight while they were there and mother would cry. The ongoing disputes between mother and V-father were "putting the children's emotional wellbeing at risk;" the children were reported to show clear signs of distress; mother and V-father would call the police on each other; the children cried every time one of the parents would call the police on the other parent; J.E. and A.E. could not sleep under those conditions; mother spent her valuable visitation time with the J.E. and A.E. looking for V-father; and J.E. and A.E. wanted to live with their father. This evidence is sufficient to support the juvenile court's order.

17

**C.      Family Law Order Awarding Sole Legal and Physical Custody of J.E**
**and A.E. to Father**

Mother contends that the juvenile court abused its discretion in issuing the family law order granting the father sole legal and physical custody of J.E. and A.E., and permitting the mother to have monitored visitation.  We disagree.

There is evidence that while in mother's care, C.E. sustained second degree burns to his feet due to the mother's neglect.  There is also evidence that J.E. and A.E. were exposed to the altercations between the mother and V-father; mother failed to undergo drug tests; mother did not visit J.E. and A.E. for several weeks, and when she did visit with them the visits were often in the context of mother's need to continually entangle herself with V-father; J.E. did not want to visit overnight with the mother due to fighting with V-father; and J.E. agreed to monitored visits with mother.

There is also evidence that father took good care of the J.E. and A.E.  Father ensured that the children were enrolled in individual counseling.  J.E. and A.E. wished to live with their father and visit with their mother.  Accordingly, there was no abuse of discretion by the juvenile court in granting father sole legal and physical custody of J.E. and A.E., with monitored visitation for mother.

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P J


KRIEGLER, J.