[No. A130956. First Dist., Div. Five. July 28, 2011.]

In re MIGUEL C., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
A.S., Defendant and Appellant.

## COUNSEL

Nicole Williams for Defendant and Appellant.

Richard R. Karlsson, County Counsel, and Grace F. Tam, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**JONES, P. J.**—A.S. (mother) appeals from the juvenile court's orders declaring her son, Miguel C. (Miguel or the minor), a dependent pursuant to Welfare and Institutions Code section 300[1] and removing him from her custody. Mother contends the removal order was "inappropriate because there was a reasonable alternative to removal that should have been considered."

---

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

According to mother, the court could have placed Miguel with his presumed father, A.C. (father), "*without also* making a removal order."[2] We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We provide a brief procedural history and recite only those facts relevant to mother's claim that the court erred by removing Miguel from her custody.

Miguel was born in May 2010. In October 2010, he was living with mother. On October 10, 2010, the Alameda County Social Services Agency (the Agency) filed a section 300 petition alleging, among other things, that mother was unable to care for Miguel because of her mental health and drug abuse problems. The Agency amended the petition several times. The operative petition alleged, among other things, that mother (1) suffers from bipolar affective disorder; (2) was placed on a section 5150 hold on October 10, 2010; (3) abuses marijuana; and (4) has three older children who are not in her care, including one child who was adopted. The court detained Miguel and, following a contested jurisdiction hearing, determined he came within section 300, subdivision (b).

In a report prepared for the dispositional hearing, the Agency recommended providing family maintenance services for father, but not for mother. The Agency reported that mother had been discharged from the Women on the Way Recovery Center after having several verbal altercations with other program residents; the Agency noted that mother's case manager from Women on the Way described mother as angry and hostile. The Agency reported that father's weekly visits with Miguel were going well and that he was "very effective with the minor and engaging."

On December 13, 2010, the court issued a temporary restraining order preventing mother from, among other things, contacting Miguel except in a supervised visitation setting after mother said she would take Miguel to Puerto Rico if given the opportunity. In a late December 2010 status update report, the Agency recommended removing Miguel from mother's custody and placing him with father, the previously noncustodial parent. The Agency explained that father's two-week trial visit with Miguel went well: "father is very attentive to the needs of the minor and the responsibility of caring for the minor. The minor is content with . . . father, he rarely cries and the minor continues to be a happy baby."

---

[2] Father is not a party to this appeal and is mentioned only where relevant to the issues raised in mother's appeal. (*In re V.F.* (2007) 157 Cal.App.4th 962, 966, fn. 2 [69 Cal.Rptr.3d 159], superseded on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57–58 [81 Cal.Rptr.3d 918].)

At the conclusion of the dispositional hearing on December 30, 2010, the court determined that returning Miguel to mother "would cause a substantial danger to [Miguel] and the alternative means are not available right now to protect [him]." The court placed Miguel with father and ordered family reunification services for mother.

## DISCUSSION

Section 361, subdivision (c)(1) provides in relevant part, "A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury. The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm."

"A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]" (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136 [98 Cal.Rptr.2d 715], disapproved on another point in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6 [110 Cal.Rptr.2d 828, 28 P.3d 876].) The juvenile court's findings must be based on clear and convincing evidence. (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 696 [13 Cal.Rptr.3d 198]; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1656 [54 Cal.Rptr.2d 722].) We review an order removing a child from parental custody for substantial evidence in a light most favorable to the juvenile court findings. (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1120 [93 Cal.Rptr.3d 418]; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [60 Cal.Rptr.2d 315].)

Mother does not challenge the court's finding that there was clear and convincing evidence that returning Miguel to her custody "would cause a substantial danger" to him. (See § 361, subd. (c)(1).) Her sole claim on appeal is the court erred by removing Miguel from her custody because "there was a less drastic alternative to removal that would have obviated the minor's removal from [her] custody." We note that mother has likely forfeited this argument by failing to raise it in the juvenile court. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686 [120 Cal.Rptr.3d 549] [general rule is a "party may not assert theories on appeal which were not raised in the trial court"]; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222 [33 Cal.Rptr.3d 337 [mother forfeited due process challenge in dependency proceeding].) We exercise our discretion to consider this claim and conclude it fails on the merits.

■ According to mother, the court could have placed Miguel with father without also removing him from her custody. She seems to rely on language from section 361, subdivision (c)(1) which directs the juvenile court to "consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to *retain* physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (Italics added.) This statutory language does not assist mother because father had nothing to "retain"—he never had physical custody at any point relevant to these proceedings. ■ Pursuant to the well-established rules of statutory construction, we " ' " 'examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." [Citation.]' " (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304 [120 Cal.Rptr.3d 135, 245 P.3d 860].) Retain means "to keep in possession or use." (Merriam-Webster Online Dict. <http:www.merriam-webster.com/dictionary/retain> [as of July 28, 2011].) Because father did not have physical custody of Miguel at any point relevant to these proceedings, he could not "retain" custody of him pursuant to section 361, subdivision (c)(1).

■ Mother has not established that the court erred by removing Miguel from mother's custody *before* placing him with father. It is axiomatic that a court cannot award custody to a noncustodial parent without first removing the child from the custodial parent. Section 361.2 and California Rules of Court, rule 5.695 support this conclusion. Section 361.2, subdivision (a) provides in relevant part, "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or

conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." ■ Section 361.2, subdivision (b) describes three scenarios where the court awards custody to the noncustodial parent, such as ordering the noncustodial parent to become legal and physical custodian of the child, ordering the noncustodial parent to assume custody of the child subject to certain conditions, or ordering the noncustodial parent to assume custody of the child subject to the juvenile court's supervision. (§ 361.2, subd. (b)(1)–(3).) California Rules of Court, rule 5.695 similarly provides that a juvenile court may "[d]eclare dependency, remove physical custody from the parent or guardian, and [¶] . . . [¶] . . . order custody to the noncustodial parent with services to one or both parents . . . ." (Cal. Rules of Court, rule 5.695(a)(7)(B).) These authorities make it clear that the juvenile court must remove the child from the custodial parent before it can award custody to the noncustodial parent.

Mother cites a trio of cases, none of which support her argument. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 61 [156 Cal.Rptr. 262] (*Jeannette S.*); *In re Steve W.* (1990) 217 Cal.App.3d 10, 22 [265 Cal.Rptr. 650] (*Steve W.*); *In re S.C.* (2006) 138 Cal.App.4th 396, 416 [41 Cal.Rptr.3d 453].) In *Jeannette S.*, the juvenile court removed the minor from her mother's care because the mother was unable to keep her home clean. (*Jeannette S., supra*, 94 Cal.App.3d at p. 56.) The appellate court reversed the removal order, concluding there was insufficient evidence to support the child's removal from the home. (*Id.* at pp. 58, 60.) The court concluded that reasonable alternatives to removal existed, namely returning the child to the mother's home under "stringent conditions of supervision" such as requiring the removal of all animals from the home or the use of a homemaker service. (*Id.* at p. 60.) The *Jeannette S.* court also determined that "assuming the trial court had a reasonable basis for concluding that [the mother] was incapable or providing a suitable home for [the child], it could have placed [the child] with her father . . . . [U]nder the trial court's broad powers of supervision over [the child] and her home environment (§ 362), it could have monitored [the child's] progress in her father's home to assure her protection." (*Jeannette S., supra*, 94 Cal.App.3d at pp. 60–61.) We believe the *Jeannette S.* court's statement about placing the minor in that case with the noncustodial parent is dicta, which we are not bound to follow. (See, e.g., *In re Jason J.* (2009) 175 Cal.App.4th 922, 935 [96 Cal.Rptr.3d 625].) The focus of the *Jeannette S.* opinion was on alternatives to removal such as intensive supervision and homemaker assistance services, not on the juvenile court's ability to place the child with the father.

We are not persuaded by mother's reliance on *Steve W., supra,* 217 Cal.App.3d at page 23. In that case, the mother lived with her boyfriend, Thomas (the father), and her two children, Steve and Steve's half brother, Amos, Jr. (*Id.* at p. 13.) The father killed Amos, Jr., and the juvenile court removed Steve from the mother's physical custody "essentially because of the slaying of his . . . half brother . . . ." (*Id.* at p. 12.) The appellate court reversed. The court determined the mother was a nonoffending parent and that the circumstances (particularly her assistance in the father's prosecution) suggested she would not resume a relationship with the father or allow him access to the surviving child. (*Id.* at p. 22.) The court explained, "[t]he clear and convincing standard justifying removal was not met in the instant case" because the "court's basis for removal was founded chiefly on speculation" that the mother would enter a new abusive relationship with another person. The court also noted that "there was no evidence that less drastic alternatives could not be successfully implemented to sufficiently protect Steve's well-being." (*Id.* at p. 23.) *Steve W.* is distinguishable. There, the mother and the father were living together and the mother was the nonoffending, custodial parent. Here, mother was not living with father, and she was the offending parent.

Mother relies on *In re S.C., supra,* 138 Cal.App.4th 396, 416 to support her claim that "[w]here one parent is the offender, separation may be a less drastic alternative to removal." There are two problems with this argument. First, it overlooks the distinction between custodial and noncustodial parents. Here, mother and father were not living together when the Agency filed the section 300 petition. While separating the offending parent from the nonoffending parent may conceivably be an alternative to removal in certain circumstances, it was not an appropriate alternative here because mother and father were already "separated" from a custody standpoint—they did not live together with Miguel or share custody of him.

The second problem is that *In re S.C.* does not support mother's argument. In that case, the appellate court affirmed the juvenile court's finding that there "was clear and convincing evidence that no reasonable means of protecting the minor existed if she were to remain in her mother's home, where the stepfather continued to reside. Appellant had not been cooperative with [the Sacramento County Department of Health and Human Services], did not believe she needed any counseling, and opposed sexual abuse counseling for the minor. Simply stated, the juvenile court reasonably could find that home supervision was inadequate to safeguard the minor from the molesting stepfather due to appellant's failure to recognize the danger that he posed. In sum, substantial evidence supports the dispositional order." (*In re S.C., supra,* 138 Cal.App.4th at p. 416.) *In re S.C.* does not stand for the proposition that where the parents do not live together, placement with the noncustodial parent may be made without removing the minor from the custodial parent.

■  We recognize that removing a child from the custody of his or her parent is a "drastic measure" (*Steve W., supra*, 217 Cal.App.3d at p. 17), but that measure was appropriate here. There was ample evidence before the juvenile court that there would be a substantial danger to Miguel's well-being if he was returned to mother's custody. Mother does not argue otherwise. Similarly, substantial evidence supports the court's conclusion that there were no reasonable means to protect Miguel's health without removing him from mother's custody. (§ 361, subd. (c)(1).) As discussed above, the court could not, in this situation, place Miguel with father without first removing him from mother's custody.

## DISPOSITION

The court's jurisdictional and dispositional orders are affirmed.

Needham, J., and Bruiniers, J., concurred.