Filed 8/5/13  In re D.T. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re D.T., a Person Coming Under the Juvenile Court Law. | B245996 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK27502) |
| Plaintiff and Respondent, | |
| v. | |
| DONALD T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Veronica McBeth, Judge.  Dismissed in part, affirmed in part.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, William D. Thetford, Deputy County Counsel for Plaintiff and Respondent.

_____

Donald T. (father) appeals from the order declaring his three-year-old daughter, D.T., a person described by Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] Father contends (1) the evidence is insufficient to support jurisdiction based on father's history of illicit drug use and a single incident of domestic violence which occurred two years before the hearing and (2) the evidence is insufficient to support the finding that removal from father's custody was the only means to protect D.T. within the meaning of section 361, subdivision (c)(1). Because father's contentions, even if accepted, would not justify reversal of the jurisdictional order, which was also based on mother's conduct, we dismiss father's appeal from the jurisdiction order. We affirm the disposition order.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father are both admitted methamphetamine addicts.[2] Born in August 2009, D.T. was eventually diagnosed with Down's syndrome and mental retardation. At three years old, she functioned at the level of an 8 to 12 month old. A referral for general neglect brought D.T. to the attention of the Los Angeles Department of Children and Family Services (DCFS) in May 2011; the allegations were determined to be unfounded. In November 2011, the Family Court awarded mother and father joint legal custody of D.T. Mother was given primary custody and father was given visitation rights.

In September 2012, D.T. lived with mother in the maternal grandmother's home in La Puente; father resided in a sober living facility but visited D.T. about twice a month. On September 20, mother was arrested after police officers executing a search warrant found methamphetamine on top of a desk in the bedroom mother shared with D.T. D.T.

---

[1] All future undesignated statutory references are to the Welfare and Institutions Code.

[2] Because mother is not a party to this appeal, we have omitted facts relating to mother's conduct except those relevant to father's appeal.

2

was released to her adult half-sister. Mother told the social worker that father was bipolar, had a history of methamphetamine use and for several years had been in and out of sober living homes; he was currently in such a home, but mother did not know the address. Mother described an incident of domestic violence that resulted in father being convicted of spousal battery in July 2010.

DCFS located father in the sober living home where he had been living since May 2012. Father told the social worker that he used methamphetamines and alcohol, but had been sober since moving into the home. During a visit with D.T. in early September, D.T. was present when mother and father argued loudly over father's discovery of some methamphetamine at mother's home; mother would not allow father to have his visit. Father asked that D.T. be placed with paternal great-aunt Yvonne H., with whom father lived when not in a sober living facility. Father's probation officer told the social worker that father's drug tests had been negative since June 6.

DCFS filed a section 300 petition which alleged that, on a prior occasion, mother and father engaged in a violent altercation in which father repeatedly struck mother in D.T.'s presence (paragraph a-1, b-3); mother created a dangerous home environment by leaving methamphetamine and drug paraphernalia in the home (paragraph b-1); mother has a history of illicit drug use and is a periodic user of methamphetamine, which renders her incapable of providing D.T. with regular care and supervision (paragraph b-2); and father has a history of illicit drug use, is a current user of illicit drugs, has multiple criminal convictions on drug-related charges; father's history and current drug use renders him incapable of providing Done with regular care and supervision (paragraph b-4).

At the detention hearing, mother asked that D.T. remain with her adult half-sister and that two maternal cousins who were present at the hearing also be assessed for placement in case a change became necessary; father asked that paternal great-aunt Yvonne be considered for placement. The Dependency Court found DCFS had established a prima facie case for dependency jurisdiction. It ordered all of the relatives

assessed and gave DCFS discretion to suitably place D.T.[3] Pending the jurisdictional hearing, mother and father were given monitored visits.

The jurisdictional report stated that father had an extensive criminal history including a number of drug related convictions. In addition to the July 2010 spousal battery conviction, an arrest warrant was issued in San Bernardino Count in September 2011 for battery on a spouse. Mother told the social worker of three incidents of domestic violence: first, the one that led to father's July 2010 conviction occurred when, in D.T.'s presence, father attacked mother as she was dropping him off at a sober living home; second, father punched mother in the face while she was in the passenger seat and D.T. was in the back seat of a car; third, father tried to choke mother until mother's brother intervened to stop him. Police were not contacted about the second two incidents. Father admitted the first incident but denied any subsequent assaults. He had completed a court-ordered 52 week domestic violence program. Regarding drug use, father stated that he began using at the age of 16; admittedly addicted to methamphetamine and alcohol, he had been sober since entering the sober living home six months ago and although he could leave, he elected to remain in order to stay sober. D.T. could not be placed with father in the sober living home.

According to a Last Minute Information For The Court filed a few days before the adjudication hearing, father had been consistently visiting D.T. and the visits were going well. Father had moved out of the sober living home and was living with paternal great-aunt Yvonne. Father told the social worker that D.T. appeared well cared for by the maternal cousins and he did not want to disrupt her placement by having her moved to Yvonne's home. In addition to having completed a Domestic Violence program, father was enrolled in individual counseling and a parenting program. He had obtained an A grade in a "Special Needs Children" class at Ventura Community College. DCFS recommended that paragraph a-1 (serious physical harm as a result of domestic violence)

---

[3] D.T. was placed with maternal cousins L.G. and Anthony G. on October 20. L.G. was familiar with the services available for D.T. because she is the caregiver for her mentally and physically disabled adult sibling.

4

of the petition be dismissed, that paragraphs b-1 (methamphetamine and drug paraphernalia found in the home), b-2 (mother's drug use), b-3 (domestic violence) and b-4 (father's drug use) be sustained and that father be given six months of reunification services.

At the hearing, father urged the Dependency Court to dismiss all of the allegations against him. Regarding domestic violence (paragraphs a-1 and b-3), he argued that the alleged incident was two years old, father had completed a domestic violence program in the interim and (notwithstanding mother's allegations) there had been no subsequent assaults. Regarding drug use (paragraph b-4), father argued he had never been under the influence while caring for D.T. and since May had consistently tested negative for drugs. Not persuaded, the Dependency Court sustained all of the allegations of the petition alleging conduct by both mother and father, finding D.T. to be a person described by subdivisions (a) and (b) of section 300. Custody was given to DCFS for suitable placement. Father timely appealed from the "jurisdiction and disposition orders."

## DISCUSSION

In a separate motion and in its Respondent's Brief, DCFS contends father's appeal from the jurisdiction and disposition orders should be dismissed. Regarding the jurisdiction order, DCFS argues there is no justiciable controversy and no relief that this court could give that would have a practical effect on father's position in the dependency proceedings. Regarding the disposition order, DCFS argues that father forfeited the issue by not objecting to the disposition order in the dependency court. As we shall explain, we agree that father's appeal from the jurisdiction order should be dismissed, but conclude that father's purported forfeiture of his arguments against the dispositional order is not grounds for dismissal. We therefore address the dispositional order and affirm it.

5

*A. The Jurisdiction Order*

It is well established that, because the juvenile court's primary concern is the protection of children, a jurisdictional finding based on the conduct of one parent is sufficient regardless of the conduct of the other parent. "Once the child is found to be endangered in the manner described by one of the subdivisions of section 300 . . . the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances." (*In re I.A.* (2011) 201 Cal.App.4th 1484,1491-1492.) Because a jurisdictional finding involving one parent is generally sufficient, the appellate court usually declines "to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*Id*. at p. 1492.) Here, mother has not appealed the jurisdictional finding involving her conduct and we thus leave that finding undisturbed. Jurisdiction over D.T. has, accordingly, been established.

The general rule notwithstanding, there are some circumstances in which a reviewing court may exercise its discretion to address additional jurisdictional findings as to one parent. These include: (1) when the finding serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454); (2) when the finding could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (*In re I.A., supra*, 201 Cal.App.4th at p. 1494); and (3) when the finding could have other consequences for the appellant, beyond dependency jurisdiction (*id.* at p. 1493). (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) In *In re Drake*, the court exercised its discretion to consider the custodial father's challenge to jurisdiction because he was seeking custody of the child and the outcome of the appeal would mean the difference between the father being an "offending" versus a "non-offending" parent, a distinction that could affect the father's custody rights under section 361, subdivision (c)(1) [when there is clear and convincing evidence that a child would be in substantial danger if returned home, the

"court shall also consider, as a reasonable means to protect [the child], allowing a non-offending parent or guardian to *retain* physical custody . . . ."]. (Italics added.) But section 361, subdivision (c)(1) does not apply to a parent who never had physical custody of the child. (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 970.) For this reason, the court in *In re I.A., supra*, at page 449, concluded that the section 361, subdivision (c)(1) distinction between "offending" and "non-offending" parents did not warrant considering the father's appeal since the child had never lived with the father. In concluding that the jurisdictional findings based on father's conduct did not present a justiciable issue, the *I.A.* court further noted that placement with a noncustodial parent pursuant to section 361.2, subdivision (a) does not require the parent to be non-offending. (*Ibid.*)

Here, any decision we might render on the allegations involving father will not result in a reversal of the court's jurisdictional order because the sustained allegations against mother supply jurisdiction. (*In re I.A., supra*, 201 Cal.App.4th at p. 1492.) D.T. never lived with father and thus this case does not fall under the *In re Drake* exception to the general rule of nonjusticability. Moreover, as we discuss below, father has not sought custody of D.T. For these reasons, we decline to address father's jurisdictional challenge and dismiss that part of the appeal.

B.      *The Disposition Order*

Father contends that, even assuming jurisdiction is proper, the dispositional order giving custody of D.T. to DCFS for suitable placement, was not supported by substantial evidence. He argues that there was not clear and convincing evidence that "removal" of D.T. from father's custody was necessary to protect D.T. from harm as required by section 361, subdivision (c). The flaw in father's argument is that, inasmuch as D.T. never resided with father, she was not "removed" from father's custody and section 361, subdivision (c) does not apply. (*In re Miguel C., supra*, 198 Cal.App.4th at p. 970.) Moreover, father neither requested that D.T. be placed with him (see § 361.2, subd. (a)), nor objected to the placement order. In fact, the evidence established that father affirmatively stated that he wanted D.T. to remain with the maternal cousins. Thus,

7

father forfeited any objection to the disposition order.  (*In re A.A.* (2012) 203 Cal.App.4th 597, 606.)

## DISPOSITION

Father's appeal from the jurisdiction order is dismissed.  The disposition order is affirmed.


                                                    RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.


        FLIER, J.