Filed 9/3/13  In re D.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.A., a Person Coming Under the Juvenile Court Law. | D063715 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12869) |
| v. | |
| A.W., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Following a contested jurisdictional and dispositional hearing, the juvenile court found true allegations that then three-month-old D.A., was a dependent child within the meaning of Welfare and Institutions Code[1] section 300, subdivision (b). The court also found it was necessary to remove the child from his mother's custody pursuant to section 361, subdivision (c)(1). D.A's mother, A.W. (Mother), appeals contending the evidence was not sufficient to support the trial court's decision as to both jurisdiction and disposition. We are satisfied the evidence is sufficient to support a true finding that D.A. is a dependent child under section 300, subdivision (b) and that the evidence also supports a finding that there was no reasonable alternative to removal of D.A. from his mother's custody. We will affirm the juvenile court's decisions.

## FACTS AND PROCEDURAL BACKGROUND

D.A. was born in January 2013. He tested positive for marijuana and suffered from sepsis and respiratory distress syndrome. Mother, who was then 19 years old, admitted she had smoked marijuana since she was 16 and that she used marijuana until two days prior to D.A.'s birth. Mother said her boyfriend, Eric, with whom she was living, smoked marijuana daily. She believed the smoke may have contributed to D.A.'s respiratory problems.

On January 29, 2013, the Health and Human Services Agency (Agency) filed a petition on behalf of D.A. alleging he was at risk of serious harm by reason of Mother's inability to protect the child or provide regular care because of her substance abuse. The

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

Agency alleged Mother had received limited prenatal care and that Eric had also admitted a history of marijuana abuse.

D.A. was detained out of home and a jurisdiction and disposition hearing was set for March 25, 2013. At that hearing the court received the various reports of social workers and heard testimony from social worker Vincent Nguyen.

The evidence at the March 25, 2013 hearing indicated Mother had a child who died in 2010 at the age of one month. The child died of respiratory problems. The social worker believed Mother's lack of consistent prenatal care and drug use during pregnancy demonstrated a lack of concern for D.A.'s health and welfare.

While the case was pending, Mother enrolled in an outpatient substance abuse program. Although she claimed her "clean date" was January 16, 2013, on January 25, 2013, she tested positive for marijuana. Mother also tested positive for marijuana on February 4, 2013. However, her test on March 4, 2013 was negative.

Originally, Eric had been named as an alleged father. However, paternity tests were conducted and results received on March 4, 2013 determined Eric was not D.A.'s father.

After the paternity test results were known, Eric kicked Mother out of his house. She was homeless and received housing referrals from the Agency. Eric allowed Mother to return to his house, but later kicked her out again.

Mother had been enrolled in an outpatient treatment program, but had missed four meetings and had been placed on a behavior contract. On March 20, 2013, Mother entered the KIVA residential treatment program.

3

At the conclusion of the jurisdictional and disposition hearing the court found the allegations true by clear and convincing evidence. The court said:

> "We don't know if she has any positive tests because she missed four or five days of the outpatient program. So who knows if she would have been tested during that time whether or not she would have been there or not. The problem is she missed four out of five absences that she had and she was on the verge of being discharged when she finally entered KIVA on March 20th.
>
> "So the court can't help but take into effect the issue that the mother has not been stable in her drug treatment program, and only five days in a residential drug treatment program is certainly not a significant period of time to show that the mom is going to stabilize in her drug treatment program in order to be able to safely protect and raise her child."

Mother filed a timely notice of appeal.

## DISCUSSION

Mother challenges both the true finding on the petition and the dispositional order removing D.A. from her custody. She contends there is insufficient evidence to support either decision. Reduced to its core, Mother's argument is the true finding on the petition was not supported by the evidence because she no longer posed a risk to the child's welfare. Mother asserts that she has quit using marijuana and is in a residential treatment program where the child could be placed with her. Thus, she argues there is no longer any risk to D.A.'s welfare and the court had a reasonable alternative to disposition, that being returning D.A. to her.

We believe that applying the proper standard of review, the record supports the both the jurisdictional and dispositional orders.

4

## A. Standard of Review

When a juvenile court's decision is challenged on the basis of insufficient evidence, we review such decision under the familiar substantial evidence standard of review. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.) It is basic to appellate review that decisions of the trial court are presumed to be correct and that it is the burden of the appellant to demonstrate error. (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 254.)

When we review a decision for substantial evidence we review the entire record in the light most favorable to the trial court and draw all reasonable inferences in support of that decision. We do not make credibility decisions or reweigh the evidence. Our task is to determine whether there is sufficient, substantial evidence to support the trial court's decision. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

## B. Jurisdiction.

In order for the juvenile court to find a child to be a dependent child under section 300, the court must find the allegations of the petition to be true by a preponderance of the evidence. (*In re Lana S.*, *supra*, 207 Cal.App.4th at p. 103; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.) In this case the court found the allegations true by clear and convincing evidence.

The petition filed by the Agency alleged D.A. came within the meaning of section 300, subdivision (b) because Mother's substance abuse, lack of prenatal care and history demonstrates she is unable to care for D.A. and to protect him from harm. The petition alleged, in part: "COUNT 1: On or about January 18, 2013, the child tested positive for

5

a narcotic/dangerous drug, to wit, marijuana; and the mother admits drug usage during pregnancy, had little prenatal care, and the [boyfriend][2] admits to a history of drug usage/has a history of drug usage/knew the mother was using drugs . . . ."

In order to prove that D.A. comes within section 300, subdivision (b), the Agency must show there is a substantial risk of harm or illness. While proof of actual harm is a basis for jurisdiction, it is not necessary for the juvenile court to wait until actual harm has been caused to the child. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re T.V.* (2013) 217 Cal.App.4th 126, 133-134.)

In this case, D.A. was born with a positive test for marijuana and with respiratory distress. Although Mother had a child die earlier of respiratory problems, she continued to smoke marijuana during her pregnancy, until two days before birth. When the social worker read the allegations to Mother she admitted that all were true. The social worker noted that D.A. would require close and careful attention in order to prevent further injury to him. Continued use of marijuana and its effect caused Mother to lounge around and not be attentive.

Mother relies on *In re Alexis E.* (2009) 171 Cal.App.4th 438 (*Alexis E.*), to support her position the evidence here is not sufficient. *Alexis E.* does not assist her. In *Alexis E.*, like the present case, the persistent use of marijuana caused the parent to be unable to effectively care for the child. Indeed, Mother has stated she believes marijuana use by

---

[2]    As previously noted Eric was determined not to be D.A.'s father. Mother was unable to identify anyone else who could have been the father. The boyfriend, Eric, was unable to stop Mother from using marijuana during the pregnancy.

her and Eric contributed to D.A.'s respiratory problems. Further, at the time of the hearing in this case, Mother had tested positive for marijuana in January and February. She had missed at least four sessions of her outpatient treatment program and had only been enrolled in KIVA for five days prior to the jurisdiction and disposition hearing.

The trial court reasonably believed Mother had only started the process of dealing with her addiction and how it potentially impacted the care of her infant child. Although she had lost one child, was suspicious that marijuana smoking had a possible connection to respiratory distress, she did not seek meaningful prenatal care and continued to smoke marijuana until two days prior to D.A.'s birth. Her efforts to deal with her addiction were recent and somewhat sporadic. It was reasonable to infer from these facts that Mother did not have an understanding of the risks to D.A. by her conduct and to the extent she was making some efforts to address the problem it was far too early to demonstrate any change in behavior. There is substantial evidence to support the true finding on the section 300, subdivision (b) petition.

### C. Dispositional Orders

Mother raises essentially the same arguments to challenge the disposition order as she did the true finding on the petition. She does not deny the allegations regarding her addiction, lack of prenatal care and difficulties with her treatment efforts. She claims she does not use marijuana and is in a respected treatment program where the child could be with her. Thus the court should have returned D.A. to her custody, even if there was a basis for jurisdiction. We reject Mother's arguments regarding disposition for the same reasons we rejected those arguments as to jurisdiction.

7

In order to remove a child from parental custody, after the court has taken jurisdiction over the child, the court must find a substantial risk of harm to the child unless he or she is removed from parental custody. (*In re Austin P*. (2004) 118 Cal.App.4th 1124, 1129; §§ 358, 360, 361.) The court must find the risk of substantial harm to be proved by clear and convincing evidence. (§ 361, subd. (c).)

Trial courts have broad discretion to fashion appropriate disposition orders to protect the child and to provide for an appropriate plan of reunification. (*In re N.M*. (2011) 197 Cal.App.4th 159, 171; *In re Miguel C*. (2011) 198 Cal.App.4th 965, 969.) The court must also determine whether there are any reasonable alternatives to removal before it can take custody away from the parent. (*Id.* at pp. 970-971; § 361, subd. (c)(3).)

The Agency offered evidence through the testimony of the social worker that removal of D.A. from Mother's custody was necessary. Not only had Mother's treatment efforts been very recent, they were inconsistent, as we have noted above. Mother had no support system, was young and only potentially beginning to understand the risks her conduct posed for D.A. It was not disputed D.A. had already suffered substantial harm by being born positive for marijuana and suffering from respiratory distress, among other ailments.

On this record, it would have been unreasonable to return D.A. to Mother's custody. Hopefully she will benefit from her treatment program and reunification efforts. The trial court certainly encouraged her to pursue those efforts so that she could regain custody of D.A. At the time of disposition, however, Mother's recent, halting efforts to deal with her personal problems were plainly not enough to allow reunification at that

8

time.  We find there is substantial evidence in the record to support the dispositional order, and that the court acted well within its discretion in fashioning such order.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.

9