Filed 9/5/14  In re J.G. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.M., Defendant and Appellant. | B249877 (Los Angeles County Super. Ct. No. CK97353) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, John C. Savittieri, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

M.M. ("mother") appeals from a juvenile court order of April 29, 2013, removing J.G. ("J.") from her custody under Welfare and Institutions Code section 361,[1] following a judgment declaring J. a dependent of the court. She contends substantial evidence does not support the order. We affirm.

## STATEMENT OF FACTS AND PROCEDURE

J. was born in 1998 to mother and G.G. She lived with mother and brothers H.G. ("H."), born in 1989, D.G. ("D."), born in 1990, and Jo.G. ("Jo."), born in 1995 ("brothers").[2]

When J. was six to ten years old, brothers digitally penetrated and fondled her vagina and had her orally copulate them when mother was not at home. Brothers told J. their behavior with her was normal in every family and J. was being a good sister by complying. On five occasions, a day or two after a brother molested her, mother would ask J. if something inappropriate had occurred between J. and brothers. J. would say "no," because she believed brothers' explanation that what they did was normal. It wasn't until J. was in middle school that she realized what brothers did was not normal. When she was a teenager, J. tried to tell mother on many occasions what brothers had done, but mother did not listen, told her she was busy, interrupted her, told her she was being stupid, and talked about her own life and problems.

J. cut herself, to help her cope with her circumstances at home. Cutting herself took away some of the pain. J. also thought about committing suicide.

J. had poor school attendance, because mother frequently required her to stay home and babysit for her niece. Mother brought J. up to feel responsible for the whole family. J. felt responsible when M. was murdered, because mother had tasked J. with keeping M. safe from the dangers created by his association with gang members.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] A fourth brother, M.G. ("M"), who was four years older than J., was murdered in 1999.

On three occasions in 2012 and early 2013, mother told J. to leave the house over J. having a boyfriend mother did not approve of and not wanting to clean the house. Mother told J. to go and live with her boyfriend if she did not want to help with the housework. When J. was told to leave on January 1, 2013, she spent the night at her boyfriend's house. Upon her return home the next day, she locked herself in the bathroom and cut herself. Mother knew J. cut herself. On January 4, J. refused medical help because mother told the doctor J. was crazy.

On January 5, 2013, under the influence of alcohol, H. attempted to open the shower curtain when he knew J. was taking a shower. On January 10, J. ran away to a friend's house because of what H. had done, and she refused to go home because she feared brothers would continue to molest her. J. disclosed to the friend's mother that brothers had sexually abused her when she was six to ten years old.

J. was detained by the Department of Children and Family Services ("Department") on January 12, 2013, and placed in a foster home. A section 300 petition was filed. Mother did not believe J.'s allegations of molestation. She felt J. fabricated her story of molestations because of J.'s boyfriend. Mother told J. she believed J. was lying. Mother sent J. messages through a relative demanding that J. stop lying and drop the case, because brothers would get into big trouble. Mother told the social worker she never left J. alone with brothers because she was aware that "things like this could happen."

On January 16, 2013, the juvenile court ordered mother to participate in sex abuse awareness and individual counseling. Mother was granted monitored visits and ordered not to bring brothers to visits. As of mid-March 2013, mother had not enrolled in court-ordered services. Mother did not initiate visits until late February.

Mother continued to not believe J. was molested. Instead of being concerned about what happened to J., mother focused on J.'s relationship with her boyfriend and how she believed this contributed to the abuse disclosures. In mid-February 2013, when asked if she believed J.'s disclosure concerning the sexual abuse, mother stated: " 'She is my daughter, and although it's hard for me to accept that her brothers, my sons, would do

something like that to her, I have to believe her.' " Mother did not know how she would protect J. if J. returned home, because she relied financially on brothers and brothers relied on her for a place to live. She needed to find out whether or not they would pay her rent if she and J. moved into a separate apartment. Mother wanted J. and brothers to live with her again. " 'I want us to be the same family we were before all this happened.' " Whenever the foster mother called mother, a brother would answer the phone. J. saw one brother after a visit, when he met mother 10 feet from where J. was standing.

J. was extremely intelligent, organized, insightful, and successful in school. In foster care, she regularly attended school, earned all A's and B's, and took advanced placement courses. She was interested in chemistry, psychology, poetry, and literature, and she hoped to attend the University of California at Berkeley. J. no longer cut herself or had thoughts of suicide. A multidisciplinary assessment team concluded J. needed to be cared for by a stable caregiver, who was committed to love, nurture, and support her. She needed support in pursuing her college goals and processing her emotions regarding her trauma history of sexual abuse and the death of her brother.

J. regretted disclosing the abuse, because mother told J. that mother no longer received financial help from brothers and her health was getting worse because of all this. J. felt responsible for mother's emotions, health, and welfare. " 'I don't want my mom to suffer any more because she has suffered a lot already and I think that if she just forgets about me, she'll be better.' " J. had come to understand no one ever protected her. She felt guilty, sad, and depressed. She did not want to return home. She believed mother complied with the court's orders because she had to, not because she wanted to, and mother would always side with brothers.

On April 29, 2013, J. was declared a dependent of the court based on sustained allegations under section 300, subdivision (d) (sexual abuse) that: J. was sexually abused by H., D., and Jo. for four years when she was six to ten years old; on January 5, 2013, H. attempted to observe J. taking a shower; mother knew or reasonably should have known of the abuse and failed to protect J.; and J. was afraid to reside in the home due to the

4

sexual abuse.  Mother did not believe the allegations.  At least two of the brothers lived in the home.  J. felt obligated to return home, because it troubled her to see mother in the state she was in.  However, she would not feel comfortable there, because "I would have to act as if nothing happened."  She believed that mother's failure to protect her was "just life.  That is the way I have always seen it.  It is the way I have always defended her.  Stuff happens in life that we cannot prevent."

J. was removed from mother's custody, reunification services were ordered, mother was ordered to participate in sex abuse awareness and individual counseling, J. was ordered to participate in individual counseling, and mother and J. were ordered to participate in conjoint counseling when appropriate.  Mother was granted unmonitored visits twice a week so long as no brother was present.

## DISCUSSION

*Removal order.*

Mother makes no contention challenging the jurisdictional findings.  She contends the evidence is not sufficient to support the dispositional order removing J. from her custody.  We disagree with the contention.

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion.  [Citations.]  The court's determination in this regard will not be reversed absent a clear abuse of discretion.' [Citation.]" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.)  " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)  "[W]hen a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*Id.* at p. 318.)  Where substantial evidence supports the

5

order, there is no abuse of discretion.[3] (*In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 839.)

Section 361 provides in pertinent part: "(c) A dependent child may not be taken from the physical custody of his or her parent[] . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence[:] . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." " 'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citation.]" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969.) "The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135.)

---

[3]  " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' '[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence … such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)' (*See In re Angelia P.* (1981) 28 Cal.3d 908, 924.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Substantial evidence supports the order removing J. from mother's custody. Mother had not made progress in becoming adequately protective. The fact she was not enrolled in rehabilitation services ordered three and a half months earlier indicates she was not committed to rehabilitating herself. She never wavered in her belief that brothers had not molested J. Her exposing J. to a brother after a visit, desire that the family live together as before, focus on her own problems, belief J. was responsible for the family's problems, attempts to make J. feel responsible for the family's problems, and focus on the boyfriend demonstrate mother lacked empathy for J. Mother denied the damaging effect her disbelief, defense of brothers, and lack of empathy for J., had on J. Sexual abuse in mother's home had resumed only months before the hearing. These circumstances make it reasonable to find that, if J. were returned to mother's custody, mother would allow brothers to have contact with J., the abuse would resume, and mother would fail to protect J. Blaming J., mother took no responsibility for the abuse or for her own circumstances. J. knew that, if she went home, she would have to pretend nothing had happened. She was resigned to a fate of not being protected and having to protect mother. It is reasonable to infer from all the foregoing that J. would go back to her self-harming behaviors. These are not circumstances in which J. would be safe from predation or receive the emotional support and nurturance necessary for her to recover from trauma. We conclude substantial evidence supports the finding J. would be at substantial risk of harm if returned home and there are no reasonable alternative means to protect J. without removing her from mother's custody. (§ 361, subd. (c).)

Mother reargues the evidence and asks us to reweigh it. We decline the request. Our role is to determine whether substantial evidence supports the finding. In this case, ample substantial evidence supports the finding. Accordingly, the juvenile court's decision to remove J. from mother's custody was not an abuse of discretion.

**DISPOSITION**

The judgment and orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.