Filed 12/31/14  In re N.D. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re N.D., a Person Coming Under the Juvenile Court Law. | B254792 |
| _____ | (Los Angeles County Super. Ct. No. CK66963) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.L., | |
| Defendant and Appellant. | |

APPEAL from judgment and orders of the Superior Court of Los Angeles County, Valerie L. Skeba, Referee.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel for Plaintiff and Respondent.

M.L. ("mother") appeals from the juvenile court's judgment and orders of January 22, 2014, declaring N.D. ("N.") a dependent of the court under Welfare and Institutions Code section 360[1] and removing N. from her custody. She contends substantial evidence does not support the sustained allegations under section 300, subdivisions (a) and (b) that mother's domestic violence relationships created a substantial risk of serious harm to N. She further contends substantial evidence does not support the order removing N. from her custody. We affirm.

**STATEMENT OF FACTS AND PROCEDURE**

N. was born to mother and S.D. (father) in 2010. Mother and father separated a month after N. was born.

Mother had an extensive history of being in relationships that involved domestic violence. When she was growing up, her father hit her mother on a daily basis and inflicted emotional abuse. Mother thought domestic violence in families was normal. All the men with whom she had children abused her.[2] The father of her first two children hit her in the eye, causing a significant injury. Mother's parental rights to her third child were terminated in 2008, as a result of domestic violence, mother's failure to protect the child, and mother's failure to participate in court-ordered services.

In 2010, mother began a relationship with E.H. (E.) which involved weekly domestic abuse and violence in N.'s presence. Frequently enraged, E. pushed, punched, kicked, and choked mother, including when mother was holding N. in her arms, and he pulled mother's hair with both hands. He told mother he would kill her if she left him. At times when E. choked her, mother lost her hearing and her vision was blurred. N. would tell E. not to hit mother and would place herself between mother and E.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Department of Children and Family Services (Department) records reflect mother had three other children living in Mexico.

E. often yelled at mother, called her degrading names, told her she was ugly, controlled her paycheck, told her what to wear, and would not let her drive the car she paid for. He did not allow her to have friends, talk to anyone, leave the apartment without him, or have a key to the apartment. E. verbally abused N. as well, calling her derogatory names and insulting her. He told N., " 'you look like a lizard, you look ugly, you dress ugly.' " Mother never made a report to the police, because she was afraid N. would be removed from her custody. She had no family, friends, or support system. She needed E. because he provided care for N. when she worked. On occasion, mother left E. and stayed with friends, but she always returned to him.

On December 27, 2012, mother left E. and took N. with her to the police station, where she reported the ongoing domestic violence. N. was detained from mother's custody by the Department, placed in foster care, and a section 300 petition was filed. On January 3, 2013, the juvenile court ordered the Department to provide mother with referrals for domestic violence counseling, and parenting and individual counseling.

On January 3, 2013, N. was declared a dependent of the court, based on sustained allegations under section 300, subdivisions (a) [the child has suffered or is at substantial risk of suffering serious physical harm inflicted nonaccidentally by a parent] and (b) [the child has suffered or is at substantial risk of suffering serious physical harm as a result of the parent's failure to protect] in that: mother and E. have a history of engaging in violent altercations in the child's presence; on December 27, 2012, and on prior occasions, E. battered mother, causing injuries, in N.'s presence and while mother was holding N.; mother failed to protect N. in that mother allowed E. to reside in the home and have unlimited access to N.; and N.'s sibling received permanent placement services due to the sibling's father's violent conduct toward mother.

Mother resided for three months in an emergency shelter run by a domestic violence agency that helped homeless victims of domestic violence. There, she participated in a parent education group and a domestic violence education group. The Department and the shelter staff advised mother she would benefit from staying at the shelter. However, mother declined the opportunity to move into the agency's family

3

transitional housing, where she would have been able to continue with groups and individual therapy and live with N. Her case manager at the shelter stated, "[i]t would greatly benefit her and her family to be in this kind of environment, where she can be taught and shown how to apply the tools needed for her to thrive not only as an individual but as a parent."

Mother participated in individual counseling weekly from April 2, 2013, to June 4, 2013, and twice a month thereafter. In July 2013, mother's therapist stated mother was making good progress and should continue in therapy because "many items remain unaddressed."

The Department located N.'s father who reported he was willing and able to provide a stable home for N. In April 2013, the juvenile court ordered unmonitored visits for both parents for three hours per week and continued the jurisdictional hearing to August 1, 2013. In a last minute information filed with the court on August 1, 2013, the Department reported that mother regularly visited N. but the foster mother reported that, shortly after beginning visits with mother, N. had outbursts of defiance toward her foster mother, during which she used foul language, such as calling the foster mother a " 'whore.' " In addition, the foster mother reported that when mother returned N. after visits, the child was wearing a diaper even though she had been potty trained.

At the jurisdictional hearing on January 22, 2014, mother's attorney asked the court to dismiss the petition because there was no evidence of a current risk to the child. N.'s attorney argued the petition should be sustained as pled and the child should be placed with father following a team decision making meeting to work out visitation with mother. The juvenile court found: "This is a long going pattern of domestic violence, and . . . whatever changes [mother] made are primarily motivated by the court's intervention[,] not any realistic change of heart or change of her point of view that domestic violence is not okay. [¶] I am concerned because children who are exposed to domestic violence at young ages – and clearly this child was – have really significant changes even seen on MRI that their brains are different than children who have not grown up in households with domestic violence, and I think we see that with [N.'s]

4

outbursts [using foul language]. . . . It's very sad that mother was so dependent on those individuals; that she maintained relationships with them rather than protect herself and protect her children. [¶] . . . [M]other has made some efforts, but . . . I just don't see the type of change that I would want before I would either dismiss the petition or place the child with mother. I think she has made somewhat minimal efforts. A lot of the [efforts were] done back last year. [¶] The domestic violence [counseling] it's an emergency shelter. It's not a full domestic program. It's the first phase. People go to that and then they go into the long-term transitional housing program which is six months, so to say mother completed it, I think overstates the situation. I think she was in it for a short time. She attended very basic stuff, domestic violence education. This is not domestic violence counseling for victims, long-term victims of domestic violence. [¶] So she has made some efforts, but I don't . . . get the sense from her in the reports that she recognizes when a situation is getting bad. She doesn't recognize what the red flags are for domestic violence. Somebody who is controlling, somebody who doesn't let her have a job or doesn't let her make phone calls or constantly questions where she is, what she is doing, who she is seeing. Those are the types of things I expect somebody to tell me, yes, I realize a relationship is a bad one where I see those flags and that tells me I am in trouble. [¶] I didn't hear her say or I didn't get from the reports that if there is a controlling[,] dominating individual that she is in a relationship with, somebody who begins to be verbally abusive and ultimately physically abusive, that she would walk out when the first signs happen. I am not getting those changes from her and that is what I would need to see."

N. was removed from mother's custody and placed in the home of parent-father under Department supervision.  Mother was ordered to participate in domestic violence counseling, parenting and individual counseling, and the order for unmonitored visitation was continued.

**DISCUSSION**

1. *Substantial evidence supports the jurisdictional findings.*

Mother contends the evidence is not sufficient to support the finding under section 300, subdivisions (a) and (b) that her history of being in relationships involving domestic violence created a current risk of substantial harm.  We disagree with the contention.

In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)  "[W]e do not reweigh the evidence, but rather determine whether, after resolving all conflicts favorably to the prevailing party, and according the prevailing party the benefit of all reasonable inferences, there is substantial evidence to support the judgment." (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465.)  (Accord, *In re Matthew S.* (1988) 201 Cal.App.3d 315, 321 [we "do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court"].)  Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In

6

such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We will focus on the statutory ground for jurisdiction in subdivision (b) of section 300.

Section 300, subdivision (b) describes a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ."

"While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. [Section 300, subdivisions (a) and (b)] require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of [section 300] 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

"[T]he court may . . . consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior. [Citation.] 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

7

"Exposing children to recurring domestic violence may be sufficient to establish jurisdiction under section 300, subdivision (b)." (*In re T.V., supra*, 217 Cal.App.4th at p. 134.) " ' "[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." [Citation.] Children can be "put in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg . . . ." [Citation.]' [Citation.]" (*In re R.C.* (2012) 210 Cal.App.4th 930, 941-942.) Even though the child was not physically harmed by the domestic violence, "[a] cycle of violence [involving the parent] constitute[s] a failure to protect [the child] 'from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.' [Citations.]" (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 135.)

Substantial evidence supports the juvenile court's findings under section 300, subdivision (b). The record contains evidence that domestic violence had deep roots in mother's life. She experienced a lifetime of domestic violence, beginning when, as a child, she lived in a household where her father regularly hit and emotionally abused her mother. The fathers of each of mother's children abused her. Before this case began, she never reported the abuse to the police. The domestic abuse in her three-year relationship with E. permeated every aspect of her life, and the abuse was severe. Mother was not rehabilitated: she did not complete the treatment she needed to insure she would avoid relationships of domestic violence in the future and would know how to protect N. from domestic violence. Mother had many issues that remained to be addressed. This is evidence of a substantial risk mother will continue to enter into and remain in relationships involving domestic violence. The physical violence exposed N. to a risk of harm: she was often present when the violence occurred and it affected her both physically and emotionally.

The foregoing is substantial evidence that there is a substantial risk, under section 300, subdivision (b), N. will encounter domestic violence and suffer serious physical

8

harm as a result, by reason of mother's failure and inability to protect her.

Mother reargues the evidence and asks us to reweigh it. This we will not do. Our role is to determine whether substantial evidence supports the finding. In this case, ample substantial evidence supports the finding.

2. *Substantial evidence supports the removal order.*

Mother contends substantial evidence does not support the dispositional order removing N. from her custody. We disagree with the contention.

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion.' [Citation.]" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) "[W]hen a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*Id.* at p. 318.) Where substantial evidence supports the order, there is no abuse of discretion. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)

Section 361 provides in pertinent part: "(c) A dependent child may not be taken from the physical custody of his or her parent[] . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence[:] . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

" 'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citation.]" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969.) "The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home." (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 135.)

Substantial evidence supports the order removing N. from mother's custody. The sustained jurisdictional findings are evidence N. cannot safely remain in mother's custody. Mother dropped out of her domestic violence program after completing only the first phase. She failed to participate in the transitional living program, where she would have been taught how to apply the tools she needed to protect N. from domestic violence. This evidence indicates she was not rehabilitated and not committed to rehabilitating herself. There was substantial evidence supporting the finding N. could not safely be returned to her care and there were no reasonable means to protect N. without removal from mother's custody. (§ 361, subd. (c).) Accordingly, the juvenile court's decision to remove N. from mother's custody was not an abuse of discretion.

## DISPOSITION

The judgment and orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, J.[*]

We concur:


KITCHING, Acting P. J.


ALDRICH, J.

---

[*]
Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.