Filed 5/15/14  In re Ka.C. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re KA. C. et al., Persons Coming Under the Juvenile Court Law. | B251597 (Los Angeles County Super. Ct. No. CK38711) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. KATHLEEN C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Tony L. Richardson Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Acting County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

* * * * * *

Appellant Kathleen C. (Mother) appeals from a disposition order removing the child K. C. from Gabriel C. (Father) and her. The juvenile court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] which alleged that Mother's and Father's substance abuse placed their children at risk. At disposition, it permitted 10-year-old Ka. C. to remain at home under the supervision of the Los Angeles County Department of Children and Family Services (Department) and ordered that three-month-old K. be suitably placed, explaining that the risks to each child from the parents' substance abuse were different.

We affirm. Substantial evidence supported the juvenile court's disposition order.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother, Father, their 10-year-old daughter Ka. and newborn K. came to the attention of the Department on May 24, 2013, when a referral reported that Mother tested positive for methamphetamine at K.'s birth. K. tested negative and did not exhibit any health problems. Mother admitted to using drugs the weekend before K.'s birth and four times previously during the pregnancy, and prenatal drug tests confirmed her drug use. Elaborating, she admitted to smoking methamphetamine socially and recreationally with Father and to lose weight. She denied smoking around Ka. or keeping drugs in the home. She added she had participated in a drug rehabilitation program after Ka. had been born testing positive for methamphetamine. She had also voluntarily placed her two adult children with a cousin due to her substance abuse issues at the time. She characterized herself as being addicted but stated she did not plan to smoke methamphetamine again.

Father stated he began smoking methamphetamine in his 20s, and though he stopped for several years, he resumed smoking it approximately one and one-half years ago for recreational purposes. The last time he smoked methamphetamine was one week before K.'s birth, and he blamed Mother's drug use on his own use. Typically, he smoked methamphetamine at a friend's house when Ka. was in school, and he also

---

[1]    Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

denied smoking in front of her or having drugs in the home. Both Mother and Father agreed to on demand drug and alcohol testing and to refrain from using drugs, and the children were released to them on those conditions.

Approximately 10 days later at a team decision meeting (TDM), Mother provided the Department with the results of her negative drug and alcohol test. Mother stated that Father was unable to test or meet with the Department because he was working out of town. The social worker privately interviewed Ka., a good student who stated she felt safe with Mother and Father. She said that drugs and alcohol "'are stuff that are bad for you,'" and she had never observed Mother or Father use drugs or alcohol, act funny or weird, or use any type of physical violence with her or each other. She added that they had stopped smoking. Father's adult son, Vincent C., who lived with the family, likewise denied ever observing Mother or Father use drugs or alcohol. When the possibility of removal was mentioned at the TDM, Mother became visibly upset. The Department observed that K. appeared bonded with Mother.

Father called the Department the next day to see if he could do anything to prevent removal and assured the Department he would drug test as soon as he was back in town. On June 7, 2013, Father tested negative for drugs and alcohol. By that time, however, the Department had obtained an order permitting the removal of K. from her parents and the removal of Ka. from Father only. Both Mother and Father were cooperative and Father agreed to move out of the home. They continued to have a positive relationship with each other and were well-bonded with both children. It appeared to the Department that neither had used drugs since K.'s birth, and Mother had been approved by the hospital to breastfeed K. She remained on a waitlist for an in-patient substance abuse program that would permit Ka. to reside with her.

The Department filed a dependency petition on June 14, 2013, alleging under section 300, subdivision (b) that Mother's and Father's history of substance abuse and current methamphetamine use—including when Mother was pregnant with K.—placed the children at risk. The juvenile court found a prima facie case for detaining K. but

permitted Ka. to be released to both parents on the condition they continue to drug test consistently and negatively.

The Department re-interviewed family members for its jurisdiction/disposition report. Mother stated she first tried marijuana when she was 20 years old and again admitted to using methamphetamine approximately five times during her pregnancy, including one week before K. was born. She was aware of what she was doing and noted that she had used drugs during her pregnancy with Ka. with no ill effects. She started using methamphetamine for weight loss. Though she denied ever using drugs in front of Ka., she admitted to returning home under the influence. She regretted using drugs, saying the reason she used was "'[i]nsanity comes to my head.'"

Father stated that he and Mother had used methamphetamine off and on for 20 years, primarily on the weekends, with one eight-year clean period during that time. He admitted that while he and Mother did not use drugs at home, they would return home under the influence and deemed that behavior a "'safety concern.'" He and Mother had been attending a parenting class and A.A./N.A. (Alcoholics Anonymous and Narcotics Anonymous) meetings, and he was looking for an outpatient substance abuse program.

Ka. had recently learned about Mother's and Father's drug use from Mother and stated it made her sad. She thought that "'[d]rugs are bad for your body. They make you crazy.'" Though she denied ever seeing her parents use drugs, she conceded that when a friend came over Mother and Father would smoke in their room and ask her to leave the room and step outside.

Though noting that Mother and Father appeared sincere and expressed regret about their actions, the Department opined that they did not appear to grasp the severity of their substance abuse or appreciate the effect it had on their children. It recommended the section 300 petition be sustained and that K. be suitably placed and Ka. be permitted to remain at home with family maintenance services.

At the August 23, 2013 jurisdiction/disposition hearing, Mother and Father pled no contest to the section 300 petition as amended; the amendment changed the description of Father from a "current" to a "periodic" user of methamphetamine.

4

Accordingly, the juvenile court found the children to be persons as described in section 300, subdivision (b).

Proceeding to disposition, the juvenile court received into evidence the Department's prior reports, a letter from Mother's substance abuse counselor, a letter from the facilitator of Mother's and Father's parenting classes, a card from a recovery center, a sign-in sheet showing Father's attendance at A.A./N.A. meetings and Father's volunteer certificate from Ka.'s school. The Department did not call any witnesses. Mother and Father testified. Consistent with her prior statements, Mother admitted to knowingly using methamphetamine approximately five times during her pregnancy with K. She stopped using methamphetamine for about seven years, but three years ago she resumed, which she attributed to a desire to lose weight. Mother answered affirmatively to the questions whether she was addicted to methamphetamine and whether she believed using methamphetamine impacted her ability to be a good parent. She admitted to being under the influence of methamphetamine in Ka.'s presence.

Since K. was detained, Mother had enrolled in an outpatient substance abuse program and had consistently tested negative for drugs both through her program and for the Department. She had been attending A.A./N.A. meetings and had received her 90-day chip. She was beginning step two of her 12-step program. She was currently looking for a sponsor. Though Mother had previously relapsed after completing a drug rehabilitation program, she believed that the strategies she had learned from her current programs would help to prevent her from relapsing again. In addition to her substance abuse programs, she had attended a parenting class. She had also attended some other meetings for weight loss in an effort to find an alternative to methamphetamine. If K. were returned to her custody, Mother had relatives available to care for the child while she attended classes and programs.

Father admitted that he was addicted to methamphetamine and believed it impacted his ability to use good judgment. He testified that he used methamphetamine with Mother to support her weight loss. He did not recall telling the Department that emotional and financial stressors triggered his methamphetamine use and denied that

5

stress contributed to his drug use.  He went through a drug rehabilitation program approximately 10 years earlier and refrained from using methamphetamine for approximately seven to eight years.  Since K. was detained, he had enrolled in a parenting program, and he described some tools and techniques he learned through the program. He recently found a substance abuse program that was compatible with his work schedule, which would begin the following month.  In addition, he had attended A.A./N.A. meetings every day and was working with a sponsor.  He explained that methamphetamine use was a small part of his life and described the volunteer work he did at Ka.'s school.

After the parties rested, the juvenile court and counsel for the Department engaged in a lengthy exchange concerning the recommendation that only K. be removed.  The Department explained that the risk from Mother's and Father's methamphetamine use was different for a 10-year-old who was regularly observed by other adults at school, who was able to articulate her observations and who could undertake basic tasks such as feeding herself, as opposed to an infant who had none of those safeguards.  After hearing argument from all counsel, the juvenile court acknowledged both Mothers' and Father's honesty and the steps they had taken to address their drug use, but stated it remained concerned about their recent methamphetamine use.  It found that the risks to an infant and a 10-year-old from that use were different, and therefore followed the Department's recommendation.  The juvenile court declared both children dependents of the court and ordered that Ka. be placed with her parents under Department supervision and that K. be suitably placed.  It expressed hope that K. could be returned home within six months.  It further ordered Mother and Father to participate in a substance abuse treatment program, a parenting program and individual counseling; Mother was further ordered to attend an A.A./N.A. program with a sponsor.  The parents received monitored visitation of no less than three hours three times per week, with the Department having discretion to liberalize.

Mother appealed.

DISCUSSION

Mother contends the disposition order should be reversed, arguing there was insufficient evidence of a substantial danger to K. if she were returned home. We find no basis for reversal.

We review for substantial evidence a parent's challenges to a disposition order removing the child from the parent. (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1078; see *In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581 [although trial court makes findings by the elevated standard of clear and convincing evidence, substantial evidence test remains the standard of review on appeal]; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881 [same].) We view the evidence in the light most favorable to the juvenile court's determination, drawing all reasonable inferences in favor of the determination, and we affirm the order even if there is other evidence supporting a contrary conclusion. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) Mother bears the burden of showing there is no evidence of a sufficiently substantial nature to support the order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

The juvenile court ordered K. removed from Mother's and Father's custody pursuant to section 361, subdivision (c)(1), which provides that a dependent child may not be taken from the physical custody of the parents unless the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

"'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citation.]" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969.) "The jurisdictional findings are prima facie evidence the

7

minor cannot safely remain in the home. . . . The focus of the statute is on averting harm to the child." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136.) "The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 170.)

Substantial evidence supported the removal order. Mother and Father admitted they used methamphetamine for over 20 years and both admitted they were addicted to the drug. They admitted that being under the influence of methamphetamine affected their judgment and ability to parent. Both had previously been through drug rehabilitation programs, and both had relapsed. Though they stated they never smoked methamphetamine in front of Ka., both admitted to returning home to care for her while under the influence, and Father characterized their behavior in that regard as a "safety concern." Moreover, though Ka. confirmed that her parents never smoked in front of her, she admitted they would smoke in another part of the house while she was present, telling her to step outside.

On the basis of this evidence, the trial court could reasonably infer that Mother's and Father's unresolved methamphetamine use—particularly their use while a child was in the home and Mother's use while pregnant with K.—constituted a substantial danger to K.'s protection. (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 767 [in cases involving children of tender years, a parent's substance abuse is prima facie evidence of inability to provide regular care, thus posing a substantial risk of physical harm].) As the Department pointed out, K. was an infant who could not fend for herself; in other words, she would be unprotected in the event Mother and Father decided to smoke methamphetamine in another room of their home or in the event they returned home under the influence as they had done in the past. (See generally *People v. Bui* (2001) 86 Cal.App.4th 1187, 1191 [published study on the effects of methamphetamine on behavior showed "increased risk-taking, distractibility, jumbled speech, changes in perception, changes in vision caused in part by dilated pupils, and changes in mood such as paranoia, agitation, and irritability," and "[w]hen the drug starts to wear off, people became very fatigued, and have a slower response time"].)

8

In asserting substantial evidence did not support removal, Mother focuses on the evidence favorable to her position, including that she and Father had consistently tested negative for drugs since K.'s birth, they had participated in A.A./N.A. meetings, they had begun a parenting class and Mother had enrolled in a substance abuse program. While we in no way intend to minimize the meaningful efforts Mother and Father have undertaken to address their methamphetamine use, we are guided by principles of substantial evidence. Thus, we "'''''"must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]'" [Citation.]"'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) The evidence showed that Mother had not yet completed her substance abuse program and Father had not yet begun his. Though Mother had begun going to A.A./N.A. meetings, she had not yet obtained a sponsor and was only on step two of 12. In view of evidence that Mother and Father had both relapsed after completing substance abuse programs, the trial court could reasonably conclude that they had not yet alleviated the condition that posed a danger to K.

Nor do we agree with Mother's assertion that the evidence offered here was akin to that in cases holding that drug use, alone, is insufficient to bring a child within the jurisdiction of the juvenile court. (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [parent's use of hard drugs alone does not support jurisdiction; the Department must "present evidence of a specific, non-speculative and substantial risk" of serious physical harm to the child].) Again, Mother and Father both admitted they were addicted to methamphetamine and they continued to use it even though they knew it affected their judgment and parenting abilities, and Father admitted that being under the influence of methamphetamine while caring for their children had created a safety issue. Moreover, though Mother tried to stop using methamphetamine after she used it during her pregnancy with Ka., she again used methamphetamine during her pregnancy with K., thereby posing a direct and significant risk to the child. (See Cruz, The Greatest Source of Wealth: Washington State's Response to Prenantal Substance Abuse (2005-2006) 41 Gonz.Law.Rev. 1, 6 ["When used during pregnancy, methamphetamine causes blood

vessels in the placenta to constrict. As a result, oxygen and nutrients supplied to the fetus are reduced. . . . Babies prenatally exposed to the drug are more likely to develop central nervous system and cardiovascular system abnormalities, as well as other abnormalities," fns. omitted].) And they remained in denial about the reasons for and extent of their use, with Father initially stating the only reason Mother smoked methamphetamine was because he did, but later testifying that the only reason he smoked was because Mother wanted to use methamphetamine to lose weight. (See *Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 [the parent's level of denial is an appropriate factor to consider when determining the risk to the child if placed with that parent].)

The evidence of Mother's and Father's over 20-year, unresolved history of methamphetamine use was unlike the evidence of drug use shown in the cases relied on by Mother. (See *In re Drake M., supra,* 211 Cal.App.4th at pp. 768-769 [insufficient evidence that the father's weekly medical marijuana use posed a risk to the child where he never used the drug in front of the child and made sure the child was being cared for by another adult during the use]; *In re Destiny S., supra*, 210 Cal.App.4th at p. 1004 [insufficient evidence that the mother's drug use caused a risk to an 11-year-old child where there was no showing weekend marijuana use affected the mother's parenting ability and there was only one instance of methamphetamine use nine years earlier when the child was under the care of her grandmother]; *In re James R.* (2009) 176 Cal.App.4th 129, 136 [insufficient evidence that single episode involving the mother's negative reaction to a combination of ibuprofen and alcohol posed a risk of harm to the child].

Contrary to Mother's assertion, K.'s young age supported the juvenile court's conclusion that the risks to her posed from Mother's and Father's methamphetamine use were different than the risks to Ka. Ten-year-old Ka. was regularly observed by other adults at school and could articulate her feelings and observations about her parents' behavior; K. was three months old. While an older child such as Ka. may be able to avoid physical danger and seek care from responsible adults if neglected by a parent, infancy is "an inherently hazardous period of life" with special vulnerability. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 825.) In large part because K. was an infant, there

10

was insufficient evidence offered to establish that she could be protected by a lesser alternative to removal. Though Mother's counsel suggested that Mother's continuing in her programs and unannounced Department visits once or twice weekly could provide adequate protection, she offered no evidence to show how those intermittent visits could adequately protect an infant in the event Mother or Father relapsed between visits. The dependency statutes recognize that "a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) Given Mother's and Father's long history of drug use, and considering Mother's recent history of drug use during pregnancy, the juvenile court could reasonably conclude that K.'s removal was necessary for her immediate protection.

## DISPOSITION

The disposition order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

CHAVEZ

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.